IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUCKENBACH TEXAS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:21-CV-871-RP |
| | § | |
| STEWART SKLOSS, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants Frontier Spirits, LLC, LRW Ventures, LLC, Luckenbach

Road Whiskey Distillery, LLC, Luckenbach Whiskey, LLC, Pura Vida Spirits Company, LLC,

Stewart Skloss, and Stemma Holdings, L.P.'s ("Defendants") Motion to Dismiss, (Dkt. 25), and

related briefing, (Dkts. 26, 28). For the reasons discussed below, the Court will deny Defendants'

motion to dismiss.

## I. BACKGROUND

### A. Factual Allegations

This case is about Luckenbach, Texas, which is in fact not a town in Texas but rather, as

Plaintiff describes it, a brand and an enterprise in Central Texas selling "a simpler, laid-back lifestyle,

harkening back to a nostalgic country atmosphere." (Second Am. Compl., Dkt. 19, at 7).

Luckenbach is a community of private properties in an unincorporated area of Fredericksburg,

Texas. (*Id.* at 5). Luckenbach started with a family's country store in the 1800s and has transformed

over the years into a tourist destination. (*Id.* at 4–6). Luckenbach consists of "a venue for hosting

live concerts, special events, and other entertainment; a retail store; a dance hall; a working saloon

selling beer and wine; a restaurant; and a collection of related products and services." (*Id.* at 6).

Plaintiff began using the Luckenbach mark and trade name in 1971. (*Id.*). Plaintiff has a specific oval logo since 1973. In 1978, Plaintiff filed for registration of LUCKENBACH as a service mark which was registered in 1982. (*Id.* at 5). Plaintiff registered the motto "Everybody's Somebody in Luckenbach" and then its LUCKENBACH logo, (*id.*):



(*See, e.g.*, Plaintiff's Marks, Resp. Mot. Prelim. Inj., Dkt. 52, at 10).

More recently, in 2018, Plaintiff, through a subsidiary, opened Luckenbach on Main in Fredericksburg, Texas, which serves beer and wine and sell Luckenbach branded products. (Second Am. Compl., Dkt. 19, at 7). In the last few years, Plaintiff, like many ventures in Central Texas, looked to expand into whiskey. (*Id.* at 8). Plaintiff's expansion into whiskey is where this legal dispute begins.

Defendant Stewart Skloss ("Skloss") met with Plaintiff's representatives in 2016 seeking a joint venture. (*Id.* at 9). Over the course of several years, the parties worked together to launch a whiskey product bearing the name Luckenbach. (*Id.* at 9–11). During that process, Defendants were aware of Plaintiff's trademarks. (*Id.* at 11). When Plaintiff chose not to partner with Skloss, he "decided to take the Luckenbach brand—to steal what he could not buy. He formed the remaining Defendant-entities, crafting a complex corporate structure and using each entity to jointly launch his new, infringing whiskey and entertainment enterprise." (*Id.* at 9). Defendants launched their business, calling their product Luckenbach Road Whiskey and registered multiple domain names containing Luckenbach's marks. (*Id.* at 9–10). Those domains include: luckenbachwhiskey.com (July 28, 2016); luckenbachroadwhiskey.com (July 10, 2017); luckenbachroadwhiskeydistillery.com

(October 17, 2018); luckenbachroaddistillery.com (August 2, 2021); saveluckenbachtexas.com (November 15, 2021); saveluckenbach.com and freeluckenbach.com (January 31, 2022); and freeluckenbachtexas.com (January 31, 2022). (*Id.*). Defendants also unsuccessfully applied to register a trademark for Luckenbach Road Whiskey. (*Id.* at 10). Defendants continue to market their whiskey and an entertainment venue. (*Id.* at 10–11).

Having decided against partnering with Skloss, Plaintiff sought another avenue for using its mark in connection with whiskey. In May 2020, Plaintiff contacted Balcones Distilling LLC ("Balcones") about entering into a license agreement to manufacture whiskey. (*Id.* at 8). Under the license agreement between Plaintiff and Balcones, Balcones must ensure the licensed products are of good quality, must take all commercially reasonable steps and precautions not to devalue or adversely affect the value, reputation, and goodwill of the marks, and has complete control over the manufacturing of the products, manner of sales, amounts and to whom those products are sold, and all operational matters related to its alcohol business. (*Id.*). Balcones pays the royalty to a charitable third party, rather than to Plaintiff. (*Id.*). On February 16, 2018, Plaintiff filed a trademark application to expand the use of its mark into whiskey products. (*Id.* at 8–9). Plaintiff "expects to receive a registration for the Luckenbach mark in connection with whiskey, either on the basis of inherent distinctiveness or acquired distinctiveness." (*Id.*).

### B.    Procedural History

A few months before Defendants launched their Luckenbach whiskey product, Plaintiff filed suit in Gillespie County, Texas on September 15, 2021. (Pet., Dkt. 1-1). In addition to Plaintiff's trademark claims, Plaintiff sought injunctive relief in the form of a temporary and permanent injunction "ordering Defendants to cease any and all use of Luckenbach Whiskey, Luckenbach Road Whiskey, Luckenbach Road Whiskey Distillery, or any other mark or name that includes

Luckenbach or any variation thereof or that is otherwise likely to cause confusion, mistake, deception, or dilution with respect to Plaintiff's marks or name." (*Id.* at 19). On September 29, 2021, Defendants removed the case to this Court. (Dkt. 1).

Plaintiff amended its complaint on October 28, 2021, (Am. Compl., Dkt. 13), and then again on December 15, 2021, (Second Am. Compl., Dkt. 19). On December 29, 2021, Defendants filed their motion to dismiss. (Dkt. 25). A few months before the motion to dismiss was filed, Plaintiff had filed a motion for preliminary injunction, (Dkt. 18), which after receiving briefing from the parties and conducting a hearing, the Court denied, (Dkt. 67).

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

4

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

Defendants move the Court to dismiss Plaintiff's claim based on five arguments: (1) Plaintiff's trademark infringement and unfair competition claims should be dismissed because they are implausible on their faces; (2) Plaintiff cannot bridge the gap from its existing goods and services to whiskey because it would be illegal; (3) Plaintiff's trademark claims should be dismissed because Plaintiff engages in naked licensing; (4) Plaintiff's trademark dilution claim should be dismissed because the complaint insufficiently pleads that Plaintiff's marks are famous for the purpose of trademark dilution; and (5) Plaintiff's cyberpiracy claim fails to state a claim. The Court will address each in turn.

### A. Plaintiffs' Trademark Infringement and Unfair Competition Claims

To plausibly allege a trademark infringement claim under the Lanham Act, a plaintiff must allege (1) ownership in a legally protectable mark and (2) infringement resulting from a likelihood of confusion. *Bd. of Supvrs. for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008). Defendants dispute that Plaintiff possesses a legally protectable trademark on the basis that "ownership of a legally protectable trademark requires *lawful* use of a trademark in commerce." (Mot. Dismiss, Dkt. 25, at 4) (citing *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007); *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) ("The unlawful use defense—which has its origins in the common law doctrine of 'unclean hands'—is therefore a way of preventing the government from having to extend the benefits of trademark protection to a seller who violates that government's laws."); *In re Midwest Tennis & Track Co.*, 29 U.S.P.Q.2d 1386, n.2 (T.T.A.B. 1993) ("It is settled that the Trademark Act's requirement of 'use in commerce,' means a 'lawful use in commerce.'")).

Specifically, Defendants argue that Plaintiffs' use of its trademark rights in connection with whiskey is unlawful because the trademark license between Plaintiff and Balcones violates the Texas Alcoholic Beverage Code. According to Defendants, Plaintiff's license violates Texas's tied-house statutes. The tied-house statutes are designed to prevent certain overlapping relationships between those engaged in the alcoholic beverage industry at different tiers. *See* Tex. Alco. Bev. Code § 102.01(a),(b). The three tiers are manufacturing, distribution, and retail. *Id.* § 102.01-.82. An example of a tied-house law in Texas is that no person who owns or has an interest in distillery may own or have an interest in a retail business. Tex. Alco. Bev. Code § 102.07(a)(1).

Defendants claim that Plaintiff violates the tied-house statutes by exerting control over Balcones. In its second amended complaint, Plaintiff alleges that Luckenbach consists of "a venue

for hosting live concerts, special events, and other entertainment; a retail stores; a dance hall; a working saloon selling beer and wine; a restaurant; and a collection of related products and services." (Second Am. Compl., Dkt. 19, at 6). Plaintiff also licensed a whiskey product under its mark to Balcones. (*Id.* at 8). Under that agreement, only Balcones can control or manage, financially or administratively, directly or indirectly, Balcones's business, and Balcones pays no royalty or fees to Plaintiff in exchange for the license. Instead, Balcones gives that money to a charitable third party "with no connections to Luckenbach or its principals." (*Id.*). Relying on *Tex. Alcoholic Bev. Comm'n v. Mark Anthony Brewing, Inc.*, No. 03-16-00039-CV, 2017 WL 4582848 (Tex. App.—Austin 2017, no pet.), in which a restaurant chain granted a trademark license to a brewer, Defendants believe Plaintiff's license with Balcones is unlawful because Plaintiff "exerts control over Balcones." (Mot. Dismiss, Dkt. 25, at 8). In *Mark Anthony Brewing*, the court acknowledged that the restaurant chain had some degree of control over the brewer's business. 2017 WL 4582848, at *3. To the contrary, here, Plaintiff's allegations explicitly disclaim control over Balcones. (*See* Second Am. Compl., Dkt. 19, at 6).

Defendants next argue that Plaintiff's license is unlawful under Section 102.01 because a license requires mutual consideration which Defendants contend is demonstrated by Balcones's use of Plaintiff's mark "expand[ing] the reach of [Plaintiff's] goodwill to new products and markets." (Mot. Dismiss, Dkt. 25, at 9). Defendants also say Plaintiff receives consideration in the form of the ability to bring this lawsuit "based on purported trademark rights associated with whiskey" and royalty payments going to a charity. (*Id.*). Receiving something of value from the license, Defendants contend, violates Section 102.07(a)(2), which says that "a person who owns or has an interest in the business of a distiller . . . may not . . . furnish, give, or lend any money, service, or thing of value to a retailer." Tex. Alco. Bev. Code § 102.07(a)(2). Defendants' argument is quickly dispatched because

nothing in the Second Amended Complaint states that Balcones gives something of value to Luckenbach under the license.

To the extent that a transfer of something of value is implied by the existence of the license, Defendants have not provided case law that would support the Court ruling—without additional factual development—that Plaintiff violates Texas's tied-house rules per se by having a license with a distiller. Rather, Defendants point to a case out of the Southern District of New York that explored the unlawful use defense—notably at the summary judgment stage—and recognized that while the defense has been recognized by the Trademark Trial and Appeal Board, "the defense has not yet been widely adopted by the federal courts." *Dessert Beauty*, 617 F. Supp. 2d at 190. This Court is reticent to dismiss Plaintiff's claims at this preliminary stage without guidance from the Fifth Circuit.

### B. Whether Plaintiff Can Bridge the Gap to Whiskey

Defendants argue that Plaintiff cannot rely on its federal registration and common law rights deriving from its use of its marks in connection with its existing goods and services "because an expansion to whiskey would be illegal." (Mot. Dismiss, Dkt. 25, at 14). Defendants' argument is based on the premise that Plaintiff cannot legally sell whiskey bearing its marks or enter into a license with a third party to manufacture whiskey bearing its mark. The Court already has concluded that Defendants' assertion that Plaintiff has violated the Texas Alcoholic Beverage Code will not succeed at this time. Thus, the Court need not evaluate whether Plaintiff violates the law with an expansion into whiskey.

### C. Naked Licensing

Defendants next contend that Plaintiff engages in naked licensing—a licensing of a mark where the licensee can attach the mark to a good of any quality and the licensor exercises insufficient control, if any, over the licensee's good. *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1075

8

(5th Cir. 1997). Defendants cite to a Western District of Wisconsin case for the proposition that if a licensor engages in naked licensing, the licensor effectively abandons its trademark rights. *See Fuller v. Heintz/Candee*, No. 07-CV-305-BBC, 2008 WL 4821653, at *2 (W.D. Wis. Nov. 4, 2008), *on reconsideration in part*, No. 07-CV-305-BBC, 2008 WL 5423199 (W.D. Wis. Dec. 30, 2008). This argument directly contradicts Defendants' initial arguments that Plaintiff receives something of value from Balcones. In any event, the Fifth Circuit has stated that a "trademark owner's failure to exercise appropriate control and supervision over its licensee[] *may* result in an abandonment of trademark protection for the licensed mark." *Exxon Corp.*, 109 F.3d at 1075–76. The existence of a naked license, even assuming Plaintiff's license with Balcones is a naked license, does not automatically mean Plaintiff abandoned its marks.

Relatedly, whether Plaintiff abandoned its marks by entering into a naked license with Balcones is a factual inquiry not suitable to be decided in this case on a motion to dismiss. *See, e.g., id.* at 1077 (referring to Oxxford's abandonment claim, which was based on naked licensing, as a "factual inquiry"); *see also Wilson v. Tessmer L. Firm, PLLC*, No. 5:18-CV-1056-DAE, 2021 WL 7448751, at *4 (W.D. Tex. Mar. 4, 2021) (determining on summary judgment that questions of fact remained regarding Defendants' naked licensing defense). Moreover, it is not clear whether Defendants properly raise a naked licensing defense, i.e., abandonment. "[S]uch a dereliction on the part of the trademark owner is largely relevant only in regard to the 'strength' of the mark; absent an ultimate showing of loss of trade significance, subsection 1127(2) (and the incorporated doctrine of naked licensing) is not available as a defense against an infringement suit brought by that trademark owner." *Exxon Corp.*, 109 F.3d at 1080 (citing 2 McCarthy, § 17:17).

### D. Plaintiff's Dilution Claim

To state a dilution claim under Texas law, a plaintiff must allege that (1) it is "the owner of a mark that is famous and distinctive" within Texas; (2) the defendant has used in commerce a mark or trade name likely to cause dilution of plaintiff's mark; and (3) such use began after plaintiff's mark became famous. Tex. Bus. & Com. Code § 16.103(a). A mark is famous if "the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the good or services of the mark's owner." *Id.* § 16.103(b). The state standard differs from the federal standard in geographic scope. *YETI Coolers, LLC v. Home Depot U.S.A., Inc.*, 1:17-CV-342-RP, 2018 WL 1277753, at *8 (W.D. Tex. Mar. 12, 2018) ("Texas law imposes the same requirement, albeit with a different geographic scope."). Defendants argue that Plaintiff fails to allege how its marks "have achieved 'household name' status with the general public." (Mot. Dismiss, Dkt. 25, at 19).

Plaintiff points to several allegations in its Second Amended Complaint that support its dilution claim:

> For decades, Luckenbach's mark has been recognized across the state and nation. Luckenbach is widely recognized by the general public throughout the United States, in Texas, and in the Texas hill country as a designation of source of Plaintiff's goods and services. Luckenbach and its marks have received widespread publicity that reaches counties and cities throughout the country and throughout Texas. Luckenbach appears in travel magazines and internet sites with nationwide and statewide readership and it attracts visitors from across the state, the nation, and even worldwide. Luckenbach advertises its mark and commercial offerings nationwide and statewide and sells its products extensively, through its online store and in person, to Texas residents and out-of-state customers. The general public of Texas and beyond regularly engages with Luckenbach's mark through visits to Luckenbach's entertainment venue and through visits to its website. Luckenbach is a household name.

(Second Am. Compl., Dkt. 19, at 12). Defendants contend those allegations are not sufficient and only allege niche fame, which is insufficient to support a claim of dilution.

Plaintiff's allegations are sufficient. At this early stage in the litigation, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Here, Plaintiff's complaint includes general allegations that its mark is famous in Texas and beyond and specific allegations like (1) the marks "have received widespread publicity that reaches counties and cities . . . throughout Texas," including "travel magazines and internet sites with . . . statewide readership," (2) Luckenbach attracts visitors from across the state, (3) Luckenbach advertises its mark and commercial offerings statewide and sells its products extensively, through its online store and in person, to Texas residents, and (4) Texans "regularly engage[] with Luckenbach's mark through visits to Luckenbach's entertainment venue and through visits to its website." (Second Am. Compl., Dkt. 19, at 12). Those allegations are similar to the dilution allegations in *YETI Coolers, LLC v. Magnum Solace, LLC*, which this Court found to be sufficient. No. 1:16-CV-663-RP, 2017 WL 5515910, at *7 (W.D. Tex. Mar. 30, 2017) (denying motion to dismiss where allegations included that YETI "extensively and continuously promoted and used its designs for years in the United States and in Texas, . . . [its] designs have become well-known indicators of the origin and quality of YETI's insulated drinkware products, . . . [it] has invested substantially in the marketing of [its good], . . . [it] has enjoyed significant sales of [its good] in the United States and Texas[,] and has expended significant resources advertising and marketing" its good) (cleaned up).

Defendants also argue that Plaintiff's allegations are insufficient to support a dilution claim under the federal standard. While Plaintiff's allegations do not strongly support a federal dilution claim, Plaintiff's allegations sufficiently plead a federal dilution claim to avoid dismissal. In *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, this Court acknowledged that the Western District had dismissed a federal dilution claim arising out of the University of Texas longhorn logo because it was not

nationally famous but still held that Haas's allegations were sufficient at the motion to dismiss stage. No. 18-CV-596, 2019 WL 3130231 (W.D. Tex. July 15, 2019). Like the plaintiff in the *Haas* case, Plaintiff may not ultimately be able to clear the bar for establishing fame but has alleged enough to proceed with its claim at this stage.

### E. Cyberpiracy

To plead a claim for cyberpiracy under the Lanham Act, a plaintiff must allege that a defendant:

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that—
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> (III) is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

15 U.S.C. § 1125(d). Defendants dispute that Plaintiff properly pleaded Defendants' bad-faith intent to profit. (Mot. Dismiss, Dkt. 25, at 21).

Section 1125(d)(1)(B) lists factors that a court may consider to determine whether a person has a bad faith intent:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B).

The Second Amended Complaint contains specific allegations as to some of those factors, and Defendants do not argue that a plaintiff must plead allegations as to each of those factors. Plaintiff alleges, at a minimum, that Defendants' trademark applications were suspended based on Plaintiff's prior-filed whiskey application; the domains refer to Plaintiff; Defendants' use of the name was temporally limited compared with Plaintiff's use; Defendants' use is a commercial use of the mark; and Defendants' intent to divert consumers to a site could harm Plaintiff's mark's goodwill by creating a likelihood of confusion. (Second Am. Compl., Dkt. 19, at 6–11, 16). In the face of Plaintiff's allegations, Defendants still persist that the claim should be dismissed, relying solely on an unpublished decision out of the Southern District of New York that dismissed a plaintiff's cyberpiracy claim: *Row, Inc. v. Hotels*, No. 15 CIV. 4419 (JFK), 2018 WL 3756456, at *1 (S.D.N.Y. July 19, 2018). The Court disagrees with Defendants that *Row, Inc.* is instructive here as the allegations in that case are not equivalent to Plaintiff's allegations, and courts can look to the unique circumstances of each case to make the bad faith determination. *See Texas Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 589 (N.D. Tex. 2009). While Plaintiff likely would need

13

to further develop its case to succeed on its cyberpiracy claim, Plaintiff has sufficiently plead allegations to survive Defendants' motion to dismiss.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 25), is **DENIED**.

**SIGNED** on September 29, 2022.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE